SARTAIN, Judge.
Plaintiff, Horace Early, instituted this suit for workmen’s compensation benefits arising out of an alleged back injury sustained while in the course and scope of his employment with Superintendence Company, Inc. The trial judge found that plaintiff was in fact injured while in the employ of Superintendence Company, Inc. and had effected a complete recovery from said injury by September 2, 1966. The trial court further held that defendant, Superintendence Company, Inc. and American Mutual Libility Insurance Company had paid all medical expenses and had made compensation payments beyond September 2, 1966 and rejected plaintiff’s claim for total and permanent disability. From this judgment, plaintiff prosecutes this appeal.
*81 FACTS
Between 10:00 and 10:40 A.M. on July-19, 1966, plaintiff, while working as a longshoreman, was moving sacks of asbestos when he felt pain in his back.
Plaintiff was taken to Dr. Otwell, in Port Allen, Louisiana, after completion of the days’ work. Dr. Otwell treated plaintiff for pain and diagnosed Early’s condition as a lumbosacral strain of the back. Subsequent to this initial visit, Dr. Otwell saw plaintiff on July 25th, August 10th, 16th, 22nd and September 13, 1966.
Dr. Otwell found no objective proof of a ruptured disc and stated that physical and laboratory studies failed to reveal any organic cause for plaintiff’s severe pain. Dr. Otwell further testified “that the amount of pain he appeared to be having was not exactly consistent with that much injury.” Subsequently, after receiving a report from Dr. Smith, in his final report dated October 10, 1966, Dr. Otwell stated that Mr. Early was able to return to work.
During the course of his treatment of plaintiff, Dr. Otwell referred him to Dr. Alvin Stander, an orthopedic specialist. Dr. Stander examined plaintiff on July 25, 1966 and because of the severity of the patient’s complaints, admitted him to Our Lady of the Lake Hospital. Plaintiff underwent the usual conservative program of treatment which consisted of traction, muscle relaxants and analgesics, and after considerable improvement, was discharged from the hospital on August 3, 1966.
Early was re-examined by Dr. Stander in his office on September 2, 1966. He continued to complain of pain in the back, right hip, and right foot. The straight leg raising test was positive when Early was in the lying position, but negative when in the sitting position. Dr. Stander stated that Early exaggerated his pain because the straight leg raising test performed both in sitting and lying positions should give the same result if real pain exists. Similarly, plaintiff had an inconsistent diminution to pin prick sensation. Dr. Stander stated that no objective findings could be demonstrated and it was his impression that there was no organic basis for the patient’s complaints. It was Dr. Stander’s opinion that plaintiff could return to work on September 2. Dr. Stander examined plaintiff the day before trial and on that date failed to note any objective findings.
Dr. William E. Smith, an orthopedic surgeon, examined Early on October 4, 1966 and found no signs of injury. In fact, Dr. Smith found that plaintiff had voluntary muscle spasms which are produced through a conscious effort on the patient’s part and are not related to injury. Dr. Smith also made the following pertinent observation:
“Q Now, Doctor, you stated in your report, ‘It is noted that the patient complains of low back pain to the flexion of the hip with the knee flexed.’ What is the significance of that?
A The significance of that is simply this: A patient with even a very acute condition in the low portion of the back should be made more comfortable by this maneuver rather than have his pain increased. As a matter of fact, this is the position that a patient is placed in the bed in the hospital for conservative treatment for an acute low back disorder.
Q When you placed this patient in this position he complained of increased pain ?
A That’s correct.”
The doctor felt that plaintiff was able to do his normal work at the time of his examination.
Dr. William Brown, a general practitioner, first examined plaintiff on October 28, 1966. He examined the patient twice in October, five times in December, twice in January and once in February. The trial judge summarized Dr. Brown’s testimony as follows:
“Dr. Brown stated that the only positive sign that he could find was that his right *82 thigh was of a smaller measurement than his left thigh. He could not, of course, testify whether there has been any atrophy since he had not examined him on the date of the accident. He stated that the plaintiff presented a picture of disc syndrome and he concluded that he felt that he could have a ruptured disc. However, it might be pointed out that Dr. Brown based his finding principally on the report that he had secured from Dr. William Fisher. It is interesting to note that Dr. Brown concluded his testimony by making the statement that ‘there was a dearth of real objective findings in the case.’ ”
Dr. Brown referred plaintiff to Dr. William Fisher, a neurosurgeon who examined plaintiff on one occasion, January 12, 1967. Dr. Fisher testified that the only truly objective finding was that of tightness of the back. No atrophy was noted. Dr. Fisher felt that Early had a probable ruptured disc at the L-4, L-5 level.
The trial judge made the following observation with which we concur:
“Frankly, the only strong factor from a medical standpoint in favor of the plaintiff’s case is the testimony of Dr. Fisher. While it is true that a neurosurgeon is best qualified to evaluate a case of this type, the Court believes that it is diiiicult to overlook testimony of two other extremely qualified orthopedic surgeons as well as the testimony of two general practitioners in this case.”
Although there was considerable lay testimony which conflicted with the medical testimony, the trial judge chose to accord greater weight to the medical testimony. The trial judge, who saw and heard the witnesses is in a better position to judge their credibility and veracity and his findings will not be disturbed in the absence of manifest error. Johnson v. R. P. Farnsworth & Co., La.App., 186 So.2d 405; Beaugelz v. Liberty Mut. Ins. Co., La.App., 173 So.2d 869; Veals v. Baton Rouge Coca-Cola Bottling Co., La.App., 174 So.2d 824.
For the above and foregoing reasons, the judgment of the trial court is hereby affirmed.
Affirmed.