CHASEZ, Judge.
This is an action in tort for injuries sustained by Mrs. Stella Davis when the left front wheel of the automobile she was driving came off and caused her to strike her head and be violently tossed around in the accident that followed. The defendants to the action are causally connected to the accident inasmuch as they were responsible for maintaining the serviceable condition of the wheels. The capacities of the named defendants are listed as follows: Robert M. Lesnack, operator of the Marrero Esso Service Center where Mrs. Davis had her automobile serviced; Humble Oil and Refining Company, owner of the station; and Insurance Company of North America, its insurer.
After a trial on the merits, judgment was rendered against defendants in the sum of $436.39 to Mr. L. B. Davis for special damages incurred on behalf of his wife, Stella Davis, this figure having been stipulated by the parties, and in the sum of $10,200.00 to Mrs. Stella Davis for pain, suffering and mental anguish, including the permanent and severe aggravation of a pre-existing arthritic condition, together with court costs, which is to include $100.00 expert fee of Dr. Weiss and legal interest. From this judgment defendants have appealed suspen-sively.
The facts concerning the accident are not in dispute. Mrs. Stella Davis took the automobile to Marrero Esso Service Center to have the wheels serviced and balanced. This work was apparently completed and the automobile was returned to Mrs. Davis as having been adequately serviced. She then drove the car from the garage and, after having driven for approximately two miles along Westbank Expressway, the left front wheel suddenly came off and the automobile came to a violent stop. The cause of the wheel coming off was attributed to the failure to tighten the lug-bolts when the wheels were balanced at Marrero Esso Service Center. In apparent recognition of the fault, the Insurance Company of North America paid a sum of $249.44 to repair the damaged automobile.
Robert Lesnack, et als, the appellants, have stated in their appearance before this court that liability for the accident is not actively contested. The only point with which they bring issue is whether Mrs. Davis sustained any injury from the accident, and if such injury was sustained, how extensively has her arthritic condition been aggravated therefrom. Appellants have urged that the lower court accepted certain testimony and fact while ignoring other data which, taken as a whole, would not support the judgment as rendered. Thus, the issue before this court is simply one of fact, and that is, to what extent has Mrs. Davis been injured in the accident for which defendants are liable.
The injuries claimed by the appellee include aggravation of a long history of rheumatoid arthritis primarily involving the cervical spine. The locus of the injury complained of appears to be confined to the neck area which would be particularly vulnerable to the sudden jolt experienced in this type accident. Although Mrs. Davis has had other accidental falls and injuries, *79 this crash, with the sudden upward movement and then being thrown back into her seat after her head struck the roof of the car, would be particularly traumatic to her pre-existing arthritis and could cause irritation to the neck area. The blow received by Mrs. Davis was undoubtedly of sufficient intensity to aggravate this already painful case of rheumatoid arthritis, and the question left to this, court is whether such aggravation can actually be proved.
Proof of Mrs. Davis’ injuries depends on the evidence offered by the three doctors who had the opportunity to observe her illness at some length. A fourth doctor, Dr. Haddow, treated Mrs. Davis for about a week after the accident but he was not produced at trial and no statement was offered by him. We must therefore look to the evidence presented by the three doctors who have examined Mrs. Davis more extensively to get the proper evaluation of her injuries.
Mrs. Davis was seen by a Dr. Arthur L. Brooks, an orthopedist associated with Ochsner Clinic, on several occasions following the accident. Because Dr. Brooks has left the jurisdiction of the court his diagnosis was presented by letter dated August IS, 1961. Dr. Brooks states that due to the accident Mrs. Davis most likely suffered aggravation to her pre-existing problem. He felt, however, that the aggravation was only a flare-up for the arthritic problem in the neck, and he was unable to determine how long this aggravation might last. Although at the time of examination Dr. Brooks thought she should gradually improve, his closing statement revealed that further examination and observation would be necessary to ascertain whether she in fact did improve.
We must conclude that Dr. Brooks’ diagnosis is pertinent only to the extent that he had examined the patient and rendered an opinion that she most likely suffered an aggravation of her pre-existing arthritis because of the accident. He admits that the length of time she may be bothered by this injury should be ascertained by further observation and examination. We must, therefore, consider his opinion in the light of those who treated Mrs. Davis subsequently.
Dr. Irvin Cahen, another orthopedist who examined Mrs. Davis, rendered an opinion in a letter dated August 7, 1962. His opinion, on which appellants have placed great emphasis, refers to Mrs. Davis’ arthritis as a slowly progressive pathology rather than as the' effect of acute exacerbation resulting from a singular trauma. While appellants have argued extensively on the basis of the foregoing statement, Dr. Cahen does admit in his report that he is unable to deny the probability that some activation did result from the accident. Nevertheless, the report of Dr. Cahen is perhaps the strongest evidence offered by appellants to refute the in-court testimony of the third attending physician, Dr. Thomas Weiss.
While Dr. Cahen does believe that Mrs. Davis’ troubles stem from the progressive nature of her disease, he relies primarily on objective symptoms as observed in x-rays and examination of the soft tissue during the interval that he saw Mrs. Davis prior to making his report. We believe that his diagnosis is based on sufficient data as far as the history of the patient is made known to him, but Dr. Cahen only saw Mrs. Davis for a rather limited period and his opinion, not subject to cross examination, should be weighted accordingly. We believe had Dr. Cahen at least made an appearance in court, then his views could have been examined more thoroughly than is afforded by the written opinion.
Dr. Thomas Weiss, the internist who treated Mrs. Davis both before and after the accident, was the physician on whom the court undoubtedly placed its greatest reliance. The evidence given by Dr. Weiss leads to the inevitable conclusion that Mrs. Davis was injured by the accident. When questioned on cross examination by Mr. *80 Fontenot, Dr. Weiss gave the following testimony:
“Professionally, I feel she is going to get worse; and I feel that trauma, if the Court decides this accident is sufficient, would be an aggravating problem.
Q. Just how great a problem?
A. Very bad.
O. How long would the effect of the aggravation last?
A. The immediate trauma may last just a matter of hours, but the damage to the weakened joints and ligaments could and probably will get progressively worse in her lifetime. I would expect it to get worse.
Q. Are you telling me that the effect of trauma would aggravate this rheumatoid arthritis, and the effect of this alleged blow to the head would last for the rest of her life?
A. Absolutely. This fibrous tissue, which is similar to the material that holds the bricks together in a building — this fibrous tissue that glues these things together, does not regenerate. This is our problem with a bad disc in the back — we wish to God a bad disc would regenerate, or regrow. So we are faced with a condition in which the tissue, once it is softened by rheumatoid arthritis, or stretched by rheumatoid arthritis, and then traumatized, it won’t go back to normal. Let’s see that vehicle is utilized, ■ here. The head is held in position by a bone that goes up inside the hole of the bony vertebral canal. The reason our head does not fall off our neck is that this process — the odontoid — is held in this position by a ligament that goes over it this way (demonstrating with hand and fingers). The spinal cord fits right in that hole. With rheumatoid arthritis there is softening of this ligament, and stretching. With trauma this can be stretched, then it swings from the bone, presses against the spinal cord, and that is where we have our damage. That is why we cannot look at a patient merely for what exists today, but for the prognosis for the future.”
He further testified that based on his past treatment of Mrs. Davis and his familiarity with her arthritis, that he felt that she was having more discomfort and pain after the trauma was received in the accident. When Dr. Weiss was questioned about the type injury Mrs. Davis experienced, he was asked:
“If you had a direct trauma on the head and the cervical spine, both above and below, as arising and falling would that be more likely to increase or aggravate the condition to the point it presently exists ?”
Dr. Weiss answered:
“It is likely it would. It probably would.”
We agree with the conclusion of the trial court that Mrs. Davis has in fact been injured to the extent of aggravation of her pre-existing rheumatoid arthritis. In coming to this conclusion, we have been influenced to some extent by the rule stated in Johnson v. R. P. Farnsworth and Company, La.App., 186 So.2d 405 at page 409:
“[1-3] It is now settled jurisprudence that in evaluating the testimony of medical experts of equal or nearly equal qualifications, considerable weight and importance must be attached to the relative opportunities for observation of the patient and familiarity with the patient and his history. The testimony of a treating physician who has had the benefit of repeated examinations and sustained observation of a patient under his direct care and treatment is to be accorded greater weight and probative value than that of a physician who has not undertaken to treat the patient but merely to examine him a few times preparatory to giving expert testimony *81 regarding the patient’s condition. Coffey v. Transport Insurance Company, La. App., 138 So.2d 158; Harris v. Great American Indemnity Company, La.App., 142 So.2d 594.”
We are of the opinion therefore that Dr. Weiss’ conclusion that Mrs. Davis was injured by the trauma received in the accident is correct. Furthermore, we cannot neglect the fact that Dr. Brooks and Dr. Cahen both indicate that they were unable to positively deny the permanent effect of the injury based on their examinations. In fact Dr. Brooks’ opinion that Mrs. Davis’ aggravation was only temporary is refuted by Dr. Cahen’s examination one year later. Thus, the conclusion of the trial court that Mrs. Davis suffered permanent and severe aggravation of a pre-existing arthritic condition must be affirmed.
With respect to damages we refer to the recent Supreme Court pronouncement on the discretion left to the trial judge. In Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127, beginning on page 131 the court stated:
“[3] We recognize that in cases of this type the Constitution makes it the duty of appellate courts to review both the law and the facts, but in their examination of the fact these courts must give effect to the basic law set out in Article 1934(3) of our Civil Code that in the assessment of damages in cases of offenses and quasi offenses ‘much discretion must be left to the judge or jury’. This law is plain and means what it says, and it is the duty of all appellate courts to follow it. Under this rule the amount of damages assessed by the judge or jury should not be disturbed unless the appellate court’s examination of the facts reveals a clear abuse of the discretion vested in the lower court.”
Thus, in accordance with this rule we affirm the amount of damages awarded in the court a qua.
Judgment appealed from is affirmed for the reasons stated. All costs of the appeal are to be borne by the defendants-appellants.
Affirmed.