271 So.2d 664 (1972)
George W. LOCKHART
v.
PARGAS, INC., et al.
No. 9059.
Court of Appeal of Louisiana, First Circuit.
November 30, 1972.
Rehearing Denied January 31, 1973.
Writ Refused March 15, 1973.
*665 Iddo Pittman, Pittman & Matheny, Hammond, for appellant.
Joseph D. Lupo, Independence, for appellees.
Before LANDRY, TUCKER and CUTRER, JJ.
TUCKER, Judge.
This is a suit both in tort and in Workmen's Compensation by the plaintiff, George W. Lockhart, distributor of liquefied petroleum gas, against the defendants, Pargas, Inc., his alleged employer, and Aetna Life & Casualty Insurance Company, its workmen's compensation liability insurance carrier. Plaintiff sued for injuries sustained September 25, 1969, when the valve on a hose he was using to fill the tanks on his truck from the Pargas bulk station at Ponchatoula, Louisiana, opened suddenly, causing the hose to whip around, striking plaintiff and fracturing two bones in his lower right leg three inches above the ankle. Plaintiff alleged that Pargas was negligent in maintaining unsafe working conditions, and specifically in utilizing the straight type pressure valve, which he considered inherently dangerous. He sued for the sum of $230,000, including $120,000 for loss of earnings, $100,000 for pain and suffering, and $10,000 for future medical expense.
*666 Alternatively plaintiff sued under the Louisiana Workmen's Compensation Act for $18,000 for 400 weeks permanent and total disability at the rate of $45.00 per week, together with anticipated medical expenses of $10,000 for remaining operations and/or the amputation of his leg, as might be required.
Additionally petitioner sued for penalties of twelve per cent (12%) and attorney fees of twenty per cent (20%) as provided under the Workmen's Compensation Act, due to the fact that Pargas ceased making compensation payments to plaintiff when it employed him as a district manager in Baton Rouge, although he was employed at a salary less than the amount of his usual former earnings with Pargas.
In the fourth judgment, rendered by the trial court in this proceeding, which was an amended judgment following rehearing, an award was made in favor of plaintiff George W. Lockhart and against defendants Pargas, Inc., and Aetna Life & Casualty Insurance Co., in solido, for permanent and total disability in a sum not to exceed Eighteen Thousand and no/100 ($18,000.00) Dollars, subject to a credit for twenty-six weeks of workmen's compensation already paid, at the rate of Forty-five and no/100 ($45.00) Dollars per week, for a period not to exceed four hundred weeks, beginning September 25, 1969, and for One Hundred Fifty-five and no/100 ($155.00) Dollars for medical expense, examinations and reports, plus five per cent (5%) per annum legal interest from the due date of each payment until paid, and for all costs of the proceedings. The amended judgment specifically voided and canceled the award of penalties on unpaid workmen's compensation payments and attorney fees.
From this judgment defendants appealed on the following specifications of error:
1. That the trial court erred in holding that the plaintiff was an employee within the purview of the Louisiana Workmen's Compensation Act.
2. That the trial court erred in finding that plaintiff was disabled.
3. That the trial court erred in the amount of its award.
4. That the trial court erred in failing to find that plaintiff's claim was barred because of failure to use safety procedures and devices.
Plaintiff-appellee answered urging the affirmation of the judgment in the trial court on an estoppel basis. He also asked for reinstatement of the penalties and the attorney fees. Alternatively he asked for damages in tort.
There can be no doubt that Lockhart was an employee of Pargas, Inc. There is no denial that he was injured while filling his truck tanks at the Pargas bulk loading station pursuant to distributing the petroleum gas to the customers of the defendant Pargas. Suit was correctly brought under the Workmen's Compensation Act instead of in tort under Louisiana Civil Code Article 2315.
It is true that appellee was purchasing his own truck, but this fact alone did not render him an independent contractor. A close examination of the facts surrounding the purchase of the truck show that it was mortgaged to and financed by Pargas, Inc., which deducted the truck payments each month from the commissions paid appellee. Appellee was not at liberty to sell his truck to any company other than Pargas. This arrangement appears to have been a subterfuge of some kind with advantages best known to Pargas, the nature of which we need not determine. Other factors indicative of the employee-employer relationship between the parties herein are the facts that all monies and accounts receivable were owned by and inured to the benefit of Pargas, Inc. Appellee had worked the same route for twenty-three years as a truck driver-salesman, working for the three companies which ante-dated Pargas. His method of operation had always been the same. It had always been that of an *667 employee and not that of an independent contractor. Appellee could sell only Pargas's fuel, which was the same situation as prevailed with the preceding companies. He took the route given him by the company, which was the same route he had always serviced, and he had no freedom to refuse to service anyone on the route. Any complaints made to appellee were passed on to his supervisor with Pargas. By appellee's testimony Pargas controlled and supervised everything, paying him his commission each month by check.
Apparently Pargas considered appellee an employee, also, for it consistently paid a workmen's compensation premium based upon the amount of the "payroll" account out of which Lockhart was paid each month. Furthermore defendant Aetna Life and Casualty Insurance Company voluntarily began payments to plaintiff the second week of his disability, at the rate baesd on an employees' total and permanent disability, and continued to pay him for 26 weeks until he assumed the duties of district manager.
In its answer to plaintiff's original petition defendants added the following paragraph as Article XII:
"Following petitioner's accident which was in the course and scope of his employment, petitioner was paid workmen's compensation benefit at the full amount allowed by law and in addition there was furnished, proper, efficient and capable medical services and that these workmen's compensation benefits continued so long as petitioner was disabled and that there is no other sum due by defendants to petitioner."
At the time of the pre-trial conference the issue of workmen's compensation coverage vel non was not even presented. At the beginning of the trial the trial judge spoke as follows:
"BY THE COURT:
We can stipulate, can we not, that the man was employed and that he did have an injury and that if he is entitled to anything it would be at the rate of $45.00 per week.

. . . . . .
BY THE COURT:
That is what you sued for. So, now, it is a matter of whether or not the man is entitled to any further benefits than those that have been paid and if so, the degree of his disability, is that correct?"
It was not until this case was appealed that it occurred to defendants to argue that plaintiff was not covered by workmen's compensation. We see no merit in this argument.
Neither do we find merit in defendants' argument that plaintiff's claim should have been barred by the failure to use safety devices, under R.S. 23:1081(3). This argument, too, has been raised on appeal for the first time. Although appellee failed to close the valve at the pump before disconnecting the hose from his truck, which he admitted was a safety precaution, though not a customary procedure, he had filled his truck at this same bulk storage plant every day for months and had a long safety record. The handle of the hose valve accidentally caught on the wire fence as appellee walked back through the opened fence gate to turn off the valve at the bulk storage tank and return the hose. The accident would not have happened if he had turned off the valve at the tank before disengaging this hose with 200 pounds pressure and a 3 pound nozzle, from his truck, but we cannot find that he "deliberately" disregarded safety measures in the words of the statute, barring recovery. It is our opinion that this is exactly the kind of occupational hazard and accident for which the Workmen's Compensation Law was designed to afford coverage.
On the question of plaintiff's disability the two medical experts who testified in this case disagreed. Dr. Matta, who was the attending physician, saw the plaintiff on the morning of the accident, operated on *668 him twice, and treated him professionally on numerous occasions for over a year following the accident, testified that, at the time of plaintiff's discharge on November 25, 1970, he found him "ambulating well with no evidence of a limp. He appeared to be completely asymptomatic. He was exhibiting 10 degrees of flexion contracture of the right knee (which Dr. Matta explained was only five degrees from full extension) and 125 degrees of flexion. The ankle exhibited a good range of motion." Dr. Matta testified further as follows:
"Taking that in consideration (two kinds of squatting explained previously) and in realistic manner of placing Mr. Lockhart's residual disability that it consisted of some degree of flexion contracture of the knee and decrease range of motion in the extremes of flexion of the knee and perhaps, some degree of decreased range of motion in the ankle. I feel that he should be able to squat in the second position described to perform any kind of work. I do not feel that that this would at all interfere with his getting in and out of a truck and it would not interfere with his applying pressure on an accelerator or applying brakes or have any connection whatsoever, at all, with his ability to connect or disconnect hoses. Therefore, I felt that Mr. Lockhart could, in that condition that we were discharging in, that he could have done his former duties.
Q. Doctor, after your services were completed, what degree of disability, if any, did you assign to Mr. Lockhart?
A. It was my opinion that he exhibited ten per cent of residual disability to his right lower extremity."
Dr. Matta freely admitted that he had not given the plaintiff any tests related to his type of work, because he thought that "The only way you can determine accurately whether a muscle is fatigued is by performing serial electromyographic tests and to determine the point of fatigueability of the muscle, from there on it is strictly a subjective opinion is what the patient feels and does."

. . . . . .
"Q. But you have not administered any of these tests?
A. No sir, as far as I am concerned, they don't have any value, it reflects only what the patient wants to do at that given time."
Dr. Matta also differed sharply from Dr. McMains, whose testimony will be given below, in his analysis of damage to plaintiff's peroneal nerve: "Any time the peroneal muscles are absent or weak, this patient will walk with his foot turning in. Mr. Lockhart does not walk with his foot turning in." Dr. Matta was very positive about finding no other injuries.
The only other medical witness was Dr. F. C. McMains who saw plaintiff on two occasions only, June 29, 1971 and September 23, 1971, for purposes of evaluation and not for treatment. Although differing from Dr. Matta in the instance of the peroneal muscle group, Dr. McMains performed no serial electromyographic tests either. Generally he found plaintiff improved from the last time that Dr. Matta had seen him on November 25, 1970. Whereas Dr. Matta found that plaintiff had a ten degree loss of extension, or five degrees from the leg's being straight, Dr. McMains found that plaintiff had full extension of his leg. Dr. Matta found, upon his last examination of plaintiff, that he lacked twenty to twenty-five degrees of flexion in being able to bend the knee fully, but Dr. McMains found only ten to fifteen degree loss of flexion of the right knee. Like Dr. Matta, Dr. McMains found that plaintiff walked without a limp and had full range of motion of the left ankle. Dr. McMains also stated that he found the right leg fracture well-healed, in excellent position and alignment, and the fracture site solid. Although Dr. Matta found no loss of motion in the right ankle whatever, Dr. McMains was of the opinion that there was a fifteen per cent loss of dorsiflexion of the right ankle.
*669 Both doctors found plaintiff incapable of squatting on his right leg because of the limitation of motion in the joints of the leg, but evaluated this finding differently. Dr. McMains thought that it precluded plaintiff's performing the same type of work as previously, but Dr. Matta disagreed, because this physician considered that squatting on both knees in order to make connection between a tank truck and a ground level butane container would be "useless" and that he knew of no one who squatted "with both feet on the ground to perform work, without losing balance or being extremely uncomfortable around his knees." See Tr. 137. Dr. Matta then stated that the other method of squatting "really used in working" is the placing of one ankle and foot backward and the other ankle and foot slightly forward. According to this expert, this latter squatting maneuver could be achieved and accomplished by the plaintiff. It is also noted that approximately 70% of the butane gas tanks serviced by the plaintiff were at waist level anyhow.
Dr. McMains testified that plaintiff would have some discomfort on prolonged walking, and "That this patient's capacity for driving a truck in view of the necessity for using his right leg for any prolonged period of time is lessened, due to his residual weakness and his loss of motion." Dr. Matta did not think that plaintiff was physically disqualified from performing his previous duties with Pargas by his injuries, and it is obvious from his statement that Dr. McMains did not think him unable to perform most aspects of his job, although he did observe that his abilities in this regard would be lessened.
In their medical findings as to the injuries and residual weaknesses sustained by plaintiff herein the two doctors testifying, both highly qualified orthopedic surgeons, do not differ substantially. It is only as to their evaluations of the findings that there is some divergence, with Dr. Matta being of the opinion that plaintiff is not disqualified from performing his former duties with Pargas, while Dr. McMains believes that his physical problems will reduce and lessen his abilities to perform the duties and tasks of his job to the extent that plaintiff's disability is permanent and total. Faced with the necessity of choosing between these two medical evaluations, this court is impelled to follow the prevailing jurisprudence of this state which has consistently held that the opinion of the treating physician is entitled to more weight than that of the physician who has merely examined the patient a few times. See particularly Johnson v. R. P. Farnsworth and Company, Inc., 186 So.2d 405 (La.App. 1st Cir. 1966), at 409, as follows:
"It is now settled jurisprudence that in evaluating the testimony of medical experts of equal or nearly equal qualifications, considerable weight and importance must be attached to the relative opportunities for observation of the patient and familiarity with the patient and his history. The testimony of a treating physician who has had the benefit of repeated examinations and sustained observation of a patient under his direct care and treatment is to be accorded greater weight and probative value than that of a physician who has not undertaken to treat the patient but merely to examine him a few times preparatory to giving expert testimony regarding the patient's condition. Coffey v. Transport Insurance Company, La.App., 138 So.2d 158; Harris v. Great American Indemnity Company, La.App., 142 So.2d 594. The testimony of a physician who examines and treats the claimant from the inception of injury is usually entitled to greater weight than the opinion of one who examines the claimant later. Bankston v. Aetna Casualty Co. of Hartford, Conn., La.App., 132 So.2d 111; Jones v. Sears, Roebuck & Co., La.App., 140 So.2d 798".
This opinion has been cited in the following cases, among others: Treadway v. State Farm Insurance Co., 204 So.2d 609 (La.App. 4th Cir. 1967); Vidrine v. U. S. Fidelity & Guaranty Co., 205 So.2d 178 (La.App. *670 3d Cir. 1967); Davis v. Lesnack, 205 So.2d 77 (La.App. 4th Cir. 1967). The same principle has been upheld in White v. Insurance Company of North America, 150 So.2d 908 (La.App. 4th Cir. 1963; Rezza v. Cziffer, 186 So.2d 174 (La.App. 4th Cir. 1966); Prier v. Massman Construction Co., 205 So.2d 109 (La.App. 3d Cir. 1967); Meche v. Maryland Casualty Co., 204 So. 2d 719 (La.App. 3d Cir. 1967); and Lotz v. Jamerson Hardware Store, 211 So.2d 391 (La.App. 4th Cir. 1968).
Relying upon the testimony of the examining physician Dr. Matta, we find that plaintiff herein was totally disabled for a period from September 25, 1969, when he was injured, to November 25, 1970, when he was discharged by Dr. Matta as fully capable of performing his previous duties, although possessed of a slight disability of the right leg. This is a period of approximately sixty-one weeks. The record does not indicate that the wages or salary received by the plaintiff from Pargas during the period between March 16, 1970 to March 1, 1971 for the job of district manager were unearned. Therefore, it cannot be said that plaintiff's emoluments were in lieu of workmen's compensation. It is true that his discharge from this position on March 1, 1971 was due to his alleged incompetence as a district manager, but this does not controvert the fact that he remained on the successor job for almost one year before he was severed. The plaintiff presumptively earned his salary, and the defendants are not entitled to credit on workmen's compensation due Lockhart for these salary payments from March 16, 1970 to November 25, 1970, the date Dr. Matta medically determined the plaintiff was able to resume the duties of his former occupation. See Mottet v. Libbey-Owens-Ford Glass Co., 220 La. 653, 57 So.2d 218; D'Antoni v. Employers' Liability Assurance Corporation, 213 La. 67, 34 So.2d 378; and Lindsey v. Continental Casualty Company, 242 La. 694, 138 So.2d 543. For a complete analysis of this subject, see Malone-Workmen's CompensationSec. 402.
Plaintiff was compensated by defendants on the basis of commissions paid to him, and not on the basis of net income. His earnings justify, an award of the maximum rate of workmen's compensation or $45.00 per week during disability.
Under the circumstances here defendants cannot be charged with penalties and attorney fees under the Workmen's Compensation Act for arbitrarily discontinuing payments to plaintiff. There is no evidence to substantiate allegations of plaintiff that defendants were in less than good faith in discontinuing workmen's compensation payments to plaintiff after offering him desk employment at a salary far exceeding the amount of workmen's compensation payments they would have paid him otherwise.
For the foregoing reasons the judgment of the trial court is amended, and the award of workmen's compensation to the plaintiff is reduced to sixty-one weeks and in all other respects the judgment of the trial court is affirmed. The appellant is cast with the costs of this appeal.
Judgment amended and affirmed.