BEER, Judge,
dissenting in part.
Dana Kemp incurred a laceration to the medial aspect of the right knee necessitating her hospitalization at Charity Hospital. Two days later, she was transferred to Tou-ro Infirmary, where she remained until her discharge on September 26, 1974, one week after the accident. Thereafter, her greatest difficulty was described as physical immobilization compounded by pain. With no elevator going to her third story apartment, she experienced difficulties ascending and descending the staircase. She received physical therapy at Touro twice a week and participated in exercise classes and yoga exercises. Connie Varóla, Kemp’s dance and yoga instructor both before and after the accident, generally corroborated Kemp’s testimony as it bears on her post-accident hardships and especially her overall immobility. However, the yoga exercises have notably helped improve her knee condition in Varola’s opinion.
Kemp returned to work on December 16, 1974, approximately three months after the accident. At the time of trial, she was teaching at Frederick Rivers Junior High School in Orleans Parish.
Dr. Kenneth N. Adatto, an expert orthopedic surgeon, testified that he and Dr. Stuart I. Phillips have followed Kemp’s medical history since her admittance to Touro Hospital on September 19,1974, until her final discharge from their supervision on January 17, 1975. Although initially assigned a 10% residual disability, this was increased to 15% by Dr. Adatto because of “a small nodule mass on the inside of the knee joint,” known as cystic medial meniscus.
Dr. Robert J. Meade, a plastic surgeon, examined the scar on Kemp’s knee on March 3, 1975, and noted the dimensions to be 2 inches long and Vi inches at the widest. He advised that the appearance of the scars can be improved with surgery estimated to cost $400. (Exh. Kemp-9.)
Dr. Phillips estimated a 10% disability of the knee joint, due to increased chances of degenerative arthritis. Dr. Adatto’s estimate is based as follows:
1) increased chances of degenerative arthritis
(Tr. 71,74) 10%
2) post-accident development of cystic medial meniscus
(Tr. 73,74) _5%
Total Estimated Disability 15%.
Dr. Adatto speculated on direct examination that the degenerative arthritis may now be expected “at the age of forty-five or fifty.” However, he qualified his statement by saying that there is “No way to predict it.” (Tr. 71.) That is about 15 or 20 years in the future.
This is unlike a situation where a pre-existing arthritic condition is definitely activated or aggravated by an accident. See Romero v. Flo-tel, Inc., 332 So.2d 596 (La.App. 3rd Cir., 1976); Mayeux v. Mock, 278 So.2d 591 (La.App. 3rd Cir., 1973); Davis v. Lesnack, 205 So.2d 77 (La.App. 4th Cir., 1967), and Kline v. Columbia Casualty Co., 155 So.2d 82 (La.App. 2nd Cir., 1963). The record discloses no evidence of existent arthritis caused or aggravated by the accident. See Mudd v. Travelers Indemnity Co., 295 So.2d 540 (La.App. 3rd Cir., 1974).
Speculative projection that Kemp may be more likely to experience arthritis when she áttains the stage of life between the “age of forty-five or fifty” (15 or 20 years in the *897 future) can not, in my view, be the basis upon which a 10% disability is determined at the time of trial. This is also the case with respect to the 5% disability attributed to the cyst. Dr. Adatto testified that cysts (a small bubble inside the medial cartilage) often “flattens on their own if you leave them alone” (Tr. 71-72), although a “flare up” of the cyst can occur. The possibility of a flare-up is the only basis for the additional 5% disability rating, according to Dr. Adatto. The remoteness of the possibility of a flare-up casts doubt on the additional 5% permanent disability, obviously based only on this possibility. Nevertheless, it is obvious that Kemp’s so-called 15% disability was relied upon by the trial court in forming the basis for its bestowal of general damages.
There is nothing in the record to support a conclusion that Kemp has, in fact, suffered any functional impairment indicative of any percentage of disability at the time of trial. Quite the contrary, a fair consideration of the record would support the conclusion that, at the time of trial, Kemp was experiencing no residual disability that could be demonstrated by any functional impairment or restriction of motion. The only thesis upon which the so-called permanent disability is grounded is in conjectural prognoses that are, in both instances, highly speculative.
Certainly, physicians are as much entitled to make full use of their professional jargon as are engineers, accountants, lawyers, etc., and it would be presumptuous to take issue-with the observation on the part of a well-meaning physician that a projection of future possibilities can form the basis for a present assignment of permanent disability. But the fact that he reaches such a conclusion in good faith neither makes it so nor makes it, in my view, binding upon the judicial process. The very nature of the term “permanent disability” has such impact in the judicial process that trial courts and appellate courts must, if they are to do their full duty, examine carefully into the basis for such a determination.
In spite of the strong presumptions ascribed to the trial court’s findings, I conclude that Kemp has markedly exaggerated her alleged pain, suffering, disability, embarrassment, etc. I further conclude that the trial court, albeit in the best of good faith, has fallen into error by giving greater weight to Kemp’s testimony than that to which it is entitled and by accepting, for the purpose of damage evaluation, the so-called 15% permanent disability thesis.
I find no permanent disability ascribable to Kemp’s injury within my considered interpretation of the term. This is not to say that I ignore the unchallenged observations by Kemp’s medical witnesses regarding the possibilities of some future problems stemming from her injury. It would be as unfair to do this as it would be, in my view, to conclude that she is suffering from a 15% permanent disability. But even when I take into account that damage factor and consider it in addition to the other proven factors which support a general damage award, the amount awarded by the trial court causes me to conclude that it is manifestly erroneous and, albeit in the best of good faith, an abuse of discretion.
Having reached this conclusion, I would follow Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1977), and, accordingly, lower the award “to the highest point which is reasonably within the discretion afforded
In this instance, I find that amount to be $15,000.00, plus special damages.
Accordingly, I respectfully dissent from the affirmance of the Kemp award.