186 So.2d 405 (1966)
Edward JOHNSON
v.
R. P. FARNSWORTH AND COMPANY, Inc., et al.
No. 6627.
Court of Appeal of Louisiana, First Circuit.
May 9, 1966.
*406 Russell, Millican & Waters, Dodd, Hirsch, Barker, Avant & Wall, Baton Rouge, for appellant.
Robert W. Smith, of Seale, Hayes, Smith & Baine, Baton Rouge, for appellees.
Before ELLIS, LOTTINGER, LANDRY, REID and BAILES, JJ.
LANDRY, Judge.
This is a suit for workmen's compensation benefits for alleged total permanent disability in which the sole issue is the duration of the employee's disability admittedly resulting from an accident occurring within the scope and during the course of his employment by defendant, R. P. Farnsworth and Company, Inc. (sometimes hereinafter referred to simply as "Farnsworth"). After trial on the merits the learned trial court rendered judgment awarding plaintiff benefits for temporary total disability during the period August 27, 1962 to May 1, 1963, with credit for compensation previously paid. Plaintiff has appealed contending the lower court erred in not awarding benefits for total permanent disability. Defendants, in brief, have conceded the judgment of the trial court is correct and pray for its affirmation.
Plaintiff, a carpenter, sustained a low back injury in a fall from a scaffold on August 27, 1962, while employed by Farnsworth in the construction of the L. S. U. Student Union building. Conceding plaintiff was disabled through October 30, 1962, Farnsworth and its insurer paid compensation benefits to said date on which appellant resumed his employment with Farnsworth on a "light duty" basis. Appellant contends his disability is total and permanent and extends beyond the May 1, 1963 termination date found by the court below. Since appellees now concede plaintiff's disability extended to May 1, 1963, as found by the trial court, we are herein concerned with the single question whether appellant has established continuance of his incapacitation beyond said date.
The sole medical evidence consists of the testimony of Dr. J. Willard Dowell, Orthopedist, plaintiff's treating physician, and Dr. Edward T. Haslam, Orthopedist, who examined appellant on three occasions. The record reflects that plaintiff was also examined by a Dr. Acree, upon referral by Dr. Dowell but Dr. Acree was not called as a witness. Appellant apparently concedes Dr. Acree's findings were negative as to his specialty, as will hereinafter be shown.
Dr. Dowell first saw plaintiff in connection with the accident in question on August 27, 1962, in the emergency room of the Baton Rouge General Hospital. Plaintiff complained of pain in the back and numbness of the left leg. X-rays taken proved negative as to fracture. Plaintiff was hospitalized for a period of ten days during which he was prescribed bed rest, pain relievers and traction. Plaintiff was next seen by Dr. Dowell in the latter's office on September 13, 1962, on which occasion Dr. Dowell prescribed diathermy and a muscle relaxant. On September 21, 1962, plaintiff returned to Dr. Dowell who, observing plaintiff exhibited some improvement *407 in symptoms, gave appellant a note to return to light duty the following day. Plaintiff was placed on restricted duty by Farnsworth for a time but continued to complain of back and leg pains for which he was examined by Dr. Dowell at intervals of one to two weeks. Because of plaintiff's persistent complaints of low back pain, Dr. Dowell hospitalized him over a week end during November, 1962, on which occasion appellant was placed in pelvic traction and was thereafter provided for a time with a home traction device. Plaintiff continued to see Dr. Dowell at one to two week intervals through December, 1962, and subsequently at less frequent interludes through February, 1963. When plaintiff returned to light duty at Dr. Dowell's recommendation in September, 1962, plaintiff was assigned to work on a Dewald saw. Later plaintiff was assigned regular carpenter's duties but was terminated January 9, 1963, when he complained he was no longer physically able to perform his work. On February 4, 1963, Dr. Dowell examined plaintiff who had then been employed two days on another job. Plaintiff returned to Dr. Dowell February 13, 1963, and was informed he could continue light duty but would not be able to resume a full regular schedule for another two months. On May 1, 1963, Dr. Dowell reported to defendants that when he saw plaintiff April 5, 1963, plaintiff had improved and should be able to return to full employment as of May 1.
During the course of treating plaintiff Dr. Dowell was unable to substantiate by objective symptoms appellant's continued complaints of pain and numbness of the leg. Because of this development Dr. Dowell referred plaintiff to Dr. Page Acree, for examination and consultation with regard to possible vascular involvement. Dr. Acree's report proved negative.
Plaintiff was next seen by Dr. Dowell on June 25, 1963, on which occasion plaintiff related he had experienced increased pain approximately three to four weeks before this particular visit but that the condition recited had improved somewhat. At this time plaintiff had no muscle spasm and was observed to be capable of back bending in reasonable comfort. Appellant again consulted Dr. Dowell on September 17, 1963, complaining of back pain but Dr. Dowell found no objective symptoms of disability. On October 4, 1963, appellant informed Dr. Dowell he felt somewhat better. Examination on this date disclosed no sustained muscle spasm and that plaintiff enjoyed a fairly good range of back motion. Plaintiff failed to keep an appointment scheduled with Dr. Dowell for October 23, 1963. On July 14, 1964, plaintiff was seen by Dr. Dowell for the last time. On this occasion plaintiff related he was suffering from pain in the low back and right leg. Dr. Dowell observed tenderness over the paravertebral muscle at the lumbar level. Plaintiff complained of pain on all leg raising tests but more so on straight leg raising on the right side. Dr. Dowell took additional X-rays which he compared with previous pictures taken in 1959 (when plaintiff was a patient as the result of injuries sustained in an automobile accident) and with X-rays taken in 1962. In substance he stated the X-rays showed some significant arthritic changes between 1959 and 1962, but only minimal changes between 1962 and 1964.
Dr. Dowell could not categorically state plaintiff was completely recovered from the effects of the accident but was of the opinion plaintiff had shown considerable improvement, had no permanent disability and should be able to perform all duties required of a carpenter without appreciable or undue pain.
Appellant was seen by Dr. Haslam on February 4, 1964, nine months after Dr. Dowell had reported plaintiff able to resume his former employment. Plaintiff related a history of back pain and complained of present pain in the low back at and below belt level. Additionally plaintiff reported persistent soreness in the lumbosacral region to the left of the mid-line but not as far as the posterior iliac spine. Plaintiff also complained of severe headaches which he demonstrated an ability to relieve by *408 turning his head in a certain manner producing a clearly audible "popping" sound in his back which phenomenon Dr. Haslam was at a loss to explain. X-rays disclosed evidence of cysts in the femoral neck and other lesions which Dr. Haslam believed had no connection with plaintiff's accidental injury. Dr. Haslam also noted marked sclerosis about the left apophyseal joint at the lumbosacral level as well as some on the right of the joint. Sclerosis, Dr. Haslam explained, is a manifestation or indication of arthritis and while it is not of traumatic origin it may be aggravated thereby. Dr. Haslam expressed the opinion a neurological disease might possibly be the cause of a gradual deterioration of plaintiff's lower spinal joints.
In Dr. Haslam's opinion, plaintiff was capable of performing light work but was disabled from engaging in heavy lifting, climbing under hazardous conditions and working in strained positions. While his testimony fails to disclose a specific and positive diagnosis of plaintiff's precise condition, Dr. Haslam nevertheless recommended a spinal fusion be performed with the assistance of a neurosurgeon because he felt plaintiff could possibly be suffering from a disc protrusion and during surgery, a neurosurgeon could explore the suspected area for such condition.
Dr. Haslam could not state whether appellant's unstable arthritic lumbosacral joint was the result of the injury or from disease process, and, if resulting from disease, whether it was aggravated or rendered symptomatic by plaintiff's accident. Dr. Haslam did not have the benefit of prior X-ray examination as did Dr. Dowell and could therefore express no opinion concerning whether plaintiff's arthritic condition antedated the accident in question. He testified, however, plaintiff told him that he, plaintiff, had experienced no prior injury or disease. Dr. Haslam was impressed with plaintiff's inability to reverse the lordosis curve when bending. He ascribed this condition to muscle spasm.
Certain inconsistencies in plaintiff's complaints were noted by Dr. Haslam as the results of tests conducted. We believe these incompatabilities are best explained in the witness's own words which we quote as follows:
"* * * There were some inconsistencies in the examination since I couldn't anatomically explain why flexion of the knees to 45 degrees, preparatory for doing Ely's test, should cause pain in his back, nor could I see why internal and external rotation of the hips should be painful here.
I also noted that when examining his hips he complained of back pain at 90 degrees at hip flexion, whereas he didn't complain of this when I was doing the same thing in examining his back. I didn't think Lasegue's test was valid since it didn't coincide with the straight leg test, and this was of some importance since Lasegue's test is supposed to be more suggestive of a ruptured disc than the plain straight leg test.
I could not explain the association of his headache with his back pain or why the headaches should be relieved by popping his back.

* * * * * *
"* * * although I could get his straight leg test to 70 degrees on the right, he complained of pain on doing the Lasegue test; that is, I dorsiflexed his foot when it was only 40 degrees. Also, on examining his back, he didn't complain of pain on 90 degrees of hip flexion, whereas on examining his hips, which was in the same position, he did.
The Ely's test, which is done with the patient lying on his stomach, shouldn't cause any back pain until the knee has been bent enough to cause the lumbar spine to move due to the pelvis rocking backward and increasing the lumbar lordosis, whereas he complained of pain when I bent his knees 45 degrees."
*409 Dr. Dowell noticed the same tendency of plaintiff to complain of pain on all tests even where pain should not result. Although Dr. Dowell found no objective symptoms he nevertheless could not rule out entirely the possibility that plaintiff was in pain. Dr. Dowell had treated plaintiff for lumbosacral strain from December, 1958, through April, 1959, said ailment resulting from an automobile accident. Dr. Dowell noted the increase in lumbar lordosis and stated that this condition had preexisted the X-rays taken by him in 1959. Based on his knowledge of appellant's condition since 1958, he expressed the opinion plaintiff was capable of doing the same type of work in which he was engaged prior to the accident. He further stated he did not consider appellant a good candidate for a spine fusion and did not recommend such procedure at this time.
Dr. Haslam's final examination of appellant was made October 20, 1964, and as a result thereof he maintained his former opinion, namely, that plaintiff should undergo a spinal fusion although he conceded surgery of this character would not alleviate plaintiff's headaches, claims of impotence and other emotional and psychological problems. Based on his last examination of appellant, he deemed plaintiff disabled.
Defendants introduced in evidence three films, taken clandestinely by private investigators who explained that they depicted plaintiff in the act of climbing, stooping, lifting, sawing, bending and hammering while in the course of performing carpenter work subsequent to May 1, 1963. These pictures show plaintiff performing his duties with apparent ease although plaintiff testified that whereas he worked at his trade subsequent to his injury, he did so out of economic necessity despite his experiencing considerable discomfort in the process.
It is now settled jurisprudence that in evaluating the testimony of medical experts of equal or nearly equal qualifications, considerable weight and importance must be attached to the relative opportunities for observation of the patient and familiarity with the patient and his history. The testimony of a treating physician who has had the benefit of repeated examinations and sustained observation of a patient under his direct care and treatment is to be accorded greater weight and probative value than that of a physician who has not undertaken to treat the patient but merely to examine him a few times preparatory to giving expert testimony regarding the patient's condition. Coffey v. Transport Insurance Company, La.App., 138 So.2d 158; Harris v. Great American Indemnity Company, La.App., 142 So.2d 594. The testimony of a physician who examines and treats the claimant from the inception of injury is usually entitled to greater weight than the opinion of one who examines the claimant later. Bankston v. Aetna Casualty Co. of Hartford, Conn., La.App., 132 So.2d 111; Jones v. Sears, Roebuck & Co., La.App., 140 So.2d 798.
In the instant matter Dr. Dowell had treated plaintiff for a similar complaint on a previous occasion; he examined and treated plaintiff from the date of the accident at least 18 or 19 times and had access to comparative X-rays made of plaintiff's back prior to the accident in question. On the other hand, Dr. Haslam saw plaintiff three times in connection with the present litigation; he had no previous reports or X-rays available for comparison and was informed by appellant that no prior injury had been suffered.
Plaintiff, citing Fourchea v. Maloney Trucking and Storage, Inc., La.App., 88 So.2d 82, urges reliance upon the lay testimony adduced to resolve the question of disability inasmuch as the medical testimony is in conflict. We note that in the Fourchea case, the contradiction or inconsistency was between the experts of plaintiff and defendant, respectively. It is of some significance that in the present case both Dr. Dowell and Dr. Haslam were called as plaintiff's witnesses.
*410 The lay testimony in the case at bar deals in great part with an unsuccessful attempt to establish that carpentry is heavy, laborious work in all its aspects and, alternatively, that a person who can perform only light work is unemployable on the labor market as a carpenter. In essence plaintiff's testimony is that he experiences pain upon climbing, stooping, lifting, bending or performing heavy work.
John Acosta, who had worked with plaintiff for defendant Farnsworth and another concern after the accident, deposed that he had seen appellant perform light work consisting of saw filing.
Called as a witness on appellant's behalf, Carl V. Taylor testified he worked under plaintiff since plaintiff was made a foreman for Weiss Construction Company on a construction project for Dow Chemical Company. The substance of his evidence is that on one occasion plaintiff complained of back pain after rising from a kneeling position assumed to examine a blueprint.
Another lay witness, Ted E. Methvin, testified he observed plaintiff on the Dow Chemical Company job and noted plaintiff appeared to be suffering while climbing stairs and had difficulty getting up and down "to check on lines and things."
Plaintiff bears the burden of establishing disability as a prerequisite to the receipt of compensation benefits by a reasonable preponderance of evidence. Joyner v. L. L. Brewton Lumber Company, La. App., 171 So.2d 811. The claimant who alleges disability because of inability to perform his usual and regular duties without appreciable pain, must establish the existence of such condition to a reasonable certainty and by a fair preponderance of testimony. Ball v. American Marine Corporation, 245 La. 515, 159 So.2d 138.
In the present case, the medical testimony preponderates in favor of the conclusion there is no objective evidence corroborative of plaintiff's complaints of pain. Plaintiff's uncorroborated subjective complaints are insufficient to support his claim.
Our learned brother below, who had an opportunity to see, hear and observe the witnesses, apparently concluded plaintiff's averments of substantial pain were not substantiated by the testimony adduced. We deem the case at bar the classic example of a situation in which the manifest error rule should apply. After reviewing the evidence in its entirety, we could not possibly conclude our learned brother below was manifestly in error in assessing and evaluating the testimony of record herein.
Accordingly, the judgment of the trial court is affirmed.
Affirmed.