216 So.2d 102 (1968)
Martin BAGLEY
v.
COMMERCIAL UNION INSURANCE COMPANY OF NEW YORK.
No. 7457.
Court of Appeal of Louisiana, First Circuit.
November 12, 1968.
Rehearing Denied December 16, 1968.
*103 Joseph F. Keogh, of Franklin & Keogh, Baton Rouge, for appellant.
William H. Brown, of Howell & Brown, Baton Rouge, for appellee.
Before LANDRY, REID and SARTAIN, JJ.
LANDRY, Judge.
Plaintiff, Martin Bagley, brings this tort action individually and on behalf of his minor daughter, Starr Anne Bagley, to recover damages for personal injuries sustained by Miss Bagley in an accident which occurred while she was riding as guest passenger in an automobile insured by defendant Commercial Union Insurance Company of New York (Commercial) and being driven by Robert A. Bowers. Plaintiff also seeks recovery of medical expense incurred in treatment of his daughter's injuries. From a judgment in favor of plaintiffs, Commercial (the sole defendant herein) has appealed. Plaintiff has answered defendant's appeal praying for an increase in the award to Miss Bagley. We find no error in the trial court's decision and affirm the decree rendered on trial below.
The accident in question was a one car mishap which occurred when the vehicle being driven by Bowers ran off the road while the operator was negotiating a curve at high speed. The incident transpired after dark on the evening of March 6, 1966, on U. S. Highway 167, a four-lane roadway, near its intersection with another thoroughfare known as Mouton-Switch Road, at a point approximately 1.6 miles north of Lafayette, Louisiana.
*104 The vehicle in question was a 1966 Plymouth two-door automobile equipped with bucket front seats and a conventional rear seat. Said automobile belonged to one P. D. Baxter who had entrusted complete custody thereof to his son, Charles Paris (Mike) Baxter. Young Baxter was present in the vehicle at the time of the accident seated on the right side of the rear seat. The left area of the rear seat was occupied by Miss Isabelle Strickland. Miss Bagley was seated in the right front bucket seat which was separated from the driver's seat by a "console."
When the accident occurred Miss Bagley and her acquaintance, Miss Strickland, were being transported from Baton Rouge to the campus of a college they were attending in Lafayette, Louisiana. The two young ladies had motored from Lafayette to Baton Rouge on the morning of the accident arriving in the capital city at about 10:00 A.M. They immediately went to a recording studio so that Miss Bagley, who played tambourine in a band known as "The Huns", could participate in a recording session with that musical group. Upon termination of the recording interlude at approximately 3:50 P.M., these young ladies decided not to return to Lafayette with the Huns but rather to remain in Baton Rouge and attempt to contact Miss Strickland's "boy-friend." While "The Huns" were loading their instruments preparatory to the return trip to Lafayette, Bowers and Bagley, acquaintances of the two young ladies, happened upon the scene and volunteered to assist Miss Strickland by driving her to the residence where her male acquaintance resided and thereafter return both young ladies to Lafayette. After checking the residence of Miss Strickland's friend and finding him out, they visited with the friend's roommate and other acquaintances who happened by, until approximately 5:00 P.M., at which time Bowers, Baxter and the two young women commenced the return trip to Lafayette. It is conceded that after crossing the Mississippi River Bridge at Baton Rouge, a stop was made at which a six pack of malt liquor was purchased and shared by the party of four in more or less equal proportion. Likewise, it is acknowledged that two additional "rest stops" were made en route to Lafayette. While the time of the accident is not fixed with certainty, it appears the incident occurred shortly after 8:00 P.M.
Plaintiffs maintain Miss Bagley was asleep at the time of the accident. Defendant contends plaintiffs have failed to carry the burden of proof inasmuch as plaintiffs offered no explanation concerning the manner in which the accident occurred. In this connection, appellant further maintains the trial court erred in finding for plaintiffs on the contradictory and inconsistent testimony of Bowers as will hereinafter appear. Alternatively, defendant urges Miss Bagley was guilty of contributory negligence and assumption of risk barring her recovery in that she voluntarily rode with Bowers knowing him to be inebriated. In the further alternative, appellant asserts the parties engaged in a joint venture as a consequence of which Bowers' negligence, if any, is imputable to Miss Bagley thus barring plaintiffs' recovery. In the final alternative, defendant avers the damages in the sum of $4,500.00 awarded Miss Bagley for personal injuries are excessive and should be reduced. Plaintiffs have answered the appeal praying for an increase in said award.
Robert A. Bowers, driver of the vehicle, whose deposition appears of record, testified in essence that he was not intoxicated and that the four occupants of the vehicle had consumed only the six pack of malt liquor en route from Baton Rouge to Lafayette. He also stated he believed Miss Bagley was asleep or dozing at the time of the accident. He explained that the incident occurred when, traveling at a speed of 85 or 90 miles per hour, he was unable to negotiate a slight curve and lost control of the vehicle. According to Bowers, the vehicle turned completely over before coming to rest. Upon being confronted with the testimony of Trooper Leon Russo, who investigated the accident and stated Bowers *105 told him at the scene that he lost control when Miss Bagley struck the steering wheel in reaching for a packet of cigarettes in Bowers' left shirt pocket, Bowers explained that he offered this version at the time because he was afraid of being criminally prosecuted or fined because of the accident. Bowers also acknowledged having given a similar statement to defendant's adjuster approximately two days following the accident in which he offered the same explanation. He repeatedly denied that Miss Bagley in any way interfered with his driving. He further averred that Miss Bagley had reached in his pocket for a cigarette approximately 10 minutes before the accident and that he immediately thereafter placed the package upon the dash of the car to make it more readily available to her future use.
Miss Bagley testified in effect that she had known Baxter and Bowers for approximately one week preceding the accident. She met them purely by chance as the Huns were loading their equipment following the recording session. In the conversation that ensued it developed that Miss Strickland desired to contact her male acquaintance but the Huns could not wait while she did so. Baxter and Bowers thereupon offered their assistance coupled with the assurance they would return the two young ladies to their campus. According to Miss Bagley, they then drove to the residence of Miss Strickland's friend but he was not at home. After visiting with the friend's roommate and other acquaintances who happened by, the party of four left for Lafayette at approximately 5:00 P.M. She also stated that Bowers drove at Baxter's request because the latter was too exhausted to drive. Miss Bagley also testified that no alcoholic beverages were consumed by anyone in the party until the group stopped on the west side of the Mississippi River Bridge and purchased a six pack of malt liquor. She also stated that two additional stops were made enroute to Lafayette to enable the group to avail themselves of rest room facilities. She denied Bowers was intoxicated or that his ability to drive properly was impaired from excessive imbibing of alcohol or otherwise. Miss Bagley also stated she had reached in Bowers' shirt pocket for a cigarette a few minutes before the accident and at this point Bowers placed the cigarettes on the dashboard of the car. In addition, she stated she was dozing at the moment of impact and did not know exactly what happened.
In general Mr. Baxter and Miss Strickland corroborated the testimony of Mr. Bowers and Miss Bagley regarding the amount of alcoholic beverages consumed by members of the party. They both denied Bowers was intoxicated or his driving ability was any wise adversely affected. Mr. Baxter further stated he was asleep at the time of the accident and did not know what occurred. Miss Strickland's testimony was to the effect that nothing in Bowers' driving was any cause of alarm to her and that when the mishap transpired she was looking out the side window.
Trooper Leon Russo testified in effect there was ample evidence the vehicle was traveling at a high rate of speed when it left the highway. He also stated he detected the odor of alcohol on Bowers' breath as well as that of Miss Bagley when he assisted in placing the latter in an ambulance. He could not state that Bowers was intoxicated and did not charge Bowers with driving while intoxicated. He recalled seeing several malt liquor cans in and around the automobile following the accident. He noted that all occupants of the car appeared dazed upon his arrival at the scene but could not tell whether such effects were due to alcohol or their being severely shaken up as a result of the accident.
From the written reasons of the trial judge appearing of record, it is evident that he carefully weighed the credibility of the witnesses in reaching the conclusion that plaintiffs should recover. Our brother below was obviously concerned over the inconsistencies in Bowers' testimony on the crucial point of whether Miss Bagley *106 caused the accident by striking the steering wheel as Bowers first reported. He, however, accepted the explanation offered by Bowers and the testimony of Miss Bagley which denied that she was in any wise responsible for the incident. In so doing, we cannot conclude that our learned colleague below erred. If any, his error in such regard is certainly not patent. Under such circumstances we feel constrained to invoke the well established rule that the finding of a trier of fact will not be disturbed unless manifestly erroneous. Satterwhite v. Zurich Insurance Company, La.App., 199 So.2d 429.
Nor do we find any merit in the contention that plaintiffs should not prevail because they have failed to carry the burden of proof. We point out first that the testimony of Bowers, accepted by the trial court, is sufficient to indict him of actionable negligence. Moreover, the doctrine of res ipsa loquitur is applicable herein inasmuch as plaintiffs have shown the host driver lost control of his vehicle and permitted it to leave the roadway and overturn. Gulf States Utilities Company v. Guidry, La.App., 183 So.2d 122. Upon such showing Bowers was presumed negligent and the burden shifted to defendant to rebut said inference. Defendant, having failed to dispel the supposition of fault thus arising, must respond in damages. Gulf States Utilities Company v. Guidry, supra.
Regarding the contention that Miss Bagley was contributorily negligent or assumed the risk of riding with Bowers who was intoxicated, we find the applicable rule thusly stated in Viator v. Grain Dealers Mutual Insurance Company, La.App., 182 So.2d 165.
"When an accident occurs involving a driver whose mental or physical faculties have been materially impaired due to the influence of intoxicants, a guest passenger who knows or should know of the driver's condition and nevertheless voluntarily rides with him cannot recover for injuries received in an accident caused in whole or in part by the driver's negligence if the alcohol-induced impairment of the driver's ability is a substantial contributory cause of the driver's negligence. Under such circumstances, the passenger's recovery is barred not only against his host driver but also against third persons whose negligence contributed to the accident, provided that the host driver's intoxicant-caused negligence contributed to the accident."
Applying the foregoing criteria, we hold as did the trial judge that the record does not justify the conclusion that impairment of Bowers' driving ability due to the consumption of alcohol was a substantial contributing cause of Bowers' negligence. Unless all occupants of the vehicle are to be branded perjurers, we can only conclude Bowers' driving capacity was unimpaired. All stated in effect he was sober. Bowers himself further testified that he ran off the road because his driving became monotonous and he gradually increased his speed without fully realizing his true rate of travel. The gist of his evidence on this issue is that he inadvertently entered the curve at an excessive rate of speed and upon realizing his predicament, attempted to control the vehicle but could not do so. We find the instant case falls within the ambit of Jones v. Continental Casualty Co. of Chicago, Ill., 246 La. 921, 169 So.2d 50, and Collier v. Maryland Casualty Company, La. App., 190 So.2d 481, in which similar affirmative defenses were held not to have been established by the defendants pleading same.
We consider next the argument that Bowers' negligence is imputable to Miss Bagley because the parties were engaged in a joint venture.
It is settled law that pertinency of the joint venture rule depends, inter alia, upon an equality of right of control over the means of transportation being employed. Lawrason v. Richard, 172 La. 696, 135 So. 29; Cornelius v. Fields, La.App., 122 So.2d *107 704. In the Lawrason case, supra, the Supreme Court stated the rule as follows:
"* * * There is no joint adventure, in the sense that the occupant of an automobile is equally liable with the driver unless there be also equal right to control the operation of the automobile."
From the evidence of record it is manifest that Miss Bagley was not in legal contemplation engaged in a joint venture with Bowers or any other member of the party. She was being transported as a guest in an automobile over which she exercised absolutely no right of control whatsoever. A mere mutuality of interest is insufficient basis upon which to invoke the joint venture rule. In addition to a joint interest there must be mutual right of control over the method of conveyance involved. Lawrason v. Richard, supra.
At this juncture we consider defendant's contention that an unfavorable inference should be drawn from the failure of plaintiffs to call the physician who initially treated her upon admission to a hospital on the night of the accident. This argument is obviously coupled with defendant's alternative plea that the damages awarded Miss Bagley are excessive. In effect our jurisprudence holds that failure to call the examining physician in cases of this nature gives rise to the negative presumption that the testimony of such a witness would be prejudicial to plaintiff's cause. See Stockstill v. Barge Thompson Corporation, et al., La.App., 184 So.2d 98; Cloud v. National Surety Corporation, La. App., 166 So.2d 31. Where, however, the party against whom the inference is sought to be imposed has established his case by a preponderance of other competent testimony, such negative inference is held to have been successfully rebutted. Evers v. State Farm Mutual Automobile Ins. Co., La.App., 187 So.2d 217; Delafosse v. Industrial Painters, Inc., La.App., 199 So.2d 559. In this regard we find that plaintiffs have produced the testimony of Dr. John T. Lewis, General Practitioner, who undertook treatment of plaintiff from March 10, 1966, four days following the accident, until June 16, 1966. Dr. Lewis' testimony, as will hereinafter appear, fully covers the nature, scope and duration of Miss Bagley's injuries. In view thereof, we unhesitatingly conclude plaintiffs have eliminated any unfavorable inference which might otherwise have resulted herein from failure to adduce the testimony of the medical authority who first treated Miss Bagley.
Adverting to the issue of quantum, we initially state that for reasons hereinafter shown, we find the award neither excessive nor inadequate. It appears Miss Bagley was confined to a hospital in Lafayette, Louisiana, for a period of three days following the accident, said interval constituting the entire period during which she was institutionalized.
In substance Miss Bagley testified that upon returning home following the accident, she experienced considerable discomfort and pain especially in her neck and back. She was compelled to walk on crutches for a while but did not wear a brace. She further stated she was nervous and had frequent headaches. At Dr. Lewis' suggestion she slept on a "hard bed" to ease her back pain. She also stated she was absent from school for a period of about two weeks which caused her to fall behind in her classes. Because of this absence she dropped a course in math. In addition, she discontinued a class in modern dancing because it was too strenuous. Miss Bagley conceded she had not consulted a physician since mid-June of 1966, but nevertheless did at times experience intermittent pain, particularly in her low back.
Dr. Lewis, appearing on behalf of plaintiffs, testified he was the Bagley family physician and had delivered Miss Bagley at her birth. He saw Miss Bagley initially on March 10, 1966, at a hospital in Baton Rouge where, upon his instructions, X-rays were made of the patient's knees, back and lumbosacral area of the back including the pelvis. Dr. Lewis found the patient generally *108 contused about the face and body and noted that she experienced difficulty in walking and displayed muscle spasms in her back. The radiological examination disclosed a linear fracture of the anterior rim of the right acetabulum or hip bone socket. Dr. Lewis also found minimal separation of the left sacroiliac joint accompanied by chipped fractures from the left ilium. He conjectured that the linear fracture of the acetabulum might conceivably be the source of difficulty by retarding relaxation necessary to normal childbirth. Dr. Lewis prescribed analgesics, muscle relaxants and directed Miss Bagley to sleep on a hard bed. He did not find it necessary to place her in a cast or traction. According to Dr. Lewis, he saw the patient approximately six times between March 10, and June 16, 1966. On the above stated latter date, Dr. Lewis found Miss Bagley to still be suffering from headaches, nervousness and back pains. Upon Dr. Lewis' suggestion, Miss Bagley avoided strenuous activities for quite some time. Dr. Lewis was also of the opinion that the patient's continued complaints of pain were justified. He was of the further opinion there appeared no indication of residual disability and little likelihood of permanent ill effects.
On the basis of the foregoing testimony, we find that the award of $4,500.00 for Miss Bagley's personal injuries are proper and conform with awards of approximately said amount for substantially similar injuries involved in Martin v. Schonlau, La. App., 136 So.2d 406; Launey v. Smith, La. App., 192 So.2d 154, and Leonard v. Travelers Insurance Company, La.App., 183 So. 2d 447.
Accordingly, the judgment of the trial court is affirmed, all costs to be paid by defendant Commercial Union Insurance Co. of New York.
Affirmed.