459 So.2d 1245 (1984)
Dorothy N. HAYES and Judson W. Hayes
v.
COMMERCIAL UNION ASSURANCE COMPANY, J.E. Fowler Petroleum Products, Inc., and Dudley L. Barron.
No. 83 CA 1196.
Court of Appeal of Louisiana, First Circuit.
November 20, 1984.
Writ Denied January 25, 1985.
*1247 Phil E. Miley, Baton Rouge, for plaintiff.
Paul M. Marks, Jr., Baton Rouge, for defendant.
Before GROVER L. COVINGTON, C.J., and LOTTINGER and JOHN S. COVINGTON[*], JJ.
JOHN S. COVINGTON, Judge Pro Tem.
This is a suit for personal injuries. The trial judge rendered judgment in favor of plaintiffs, awarding Dorothy N. Hayes $20,000.00 for general damages, $6,618.42 to her husband, Judson W. Hayes for special damages, denied recovery for future medical expenses and cast defendants for all court costs. Plaintiffs devolutively appealed, seeking increases in both general and special damages. Defendants answered the appeal seeking decreases of both general and special damages, and an affirmation of the judgment insofar as it did not award future medical expenses.

LIABILITY STIPULATED
Defendants and plaintiffs stipulated to liability and the ceiling of that liability, namely policy limits, but did not stipulate that the accident was the cause of the injuries alleged in the suit or that the vast majority of medical expenses were either for treatment of problems related to the accident or were reasonable.
Sometime before trial date all parties stipulated that they had no objection to the Trial Judge's reviewing medical depositions, reports, and records prior to the trial.
All medical testimony was by deposition. Other medical evidence consisted of physicians' reports and bills for services, and Mrs. Hayes' hospital record of the April 15 to April 19, 1980 confinement. Live testimony was given by Mr. and Mrs. Hayes, their daughter, Mr. Hayes' aunt, a minister of the church the Hayes attend and a neighbor.

FACTS
Mrs. Hayes' automobile was struck by a tractor-trailer rig owned by J.E. Fowler Petroleum Products, Inc. (Fowler Petroleum) and driven by Dudley L. Barron (Barron). The automobile was virtually demolished *1248 and Mrs. Hayes was trapped in the wreckage for a while.
About one and one fourth hours after the accident Mrs. Hayes arrived at the Emergency Room of Our Lady of the Lake Regional Medical Center (OLOL) by ambulance. She was treated initially by Dr. Morris, an Emergency Room physician, who informed Dr. James Lutschg, Mrs. Hayes' physician, that she had been involved in an accident. Mrs. Hayes was admitted to OLOL on orders from Dr. Lutschg.
Two days after the accident Dr. Richard Bolton, an orthopedist, examined Mrs. Hayes as requested by Dr. Lutschg. Also, at Dr. Lutschg's request, Dr. William Dimattia, an ENT specialist, examined Mrs. Hayes to determine whether glass particles remained in her left ear canal.
Between the date of the accident, April 15, 1980, and the trial of this case, on June 29, 1983, Mrs. Hayes was examined, treated, and/or evaluated by several physicians and an "acupuncturist's assistant".
Mrs. Hayes was seen by Dr. Lutschg, an internal medicine specialist, only once between April 19 and April 25, 1980. Dr. Dimattia examined her only in the hospital and never at his office. Dr. Flynn evaluated her on August 5, 1980 on a referral from Dr. Jere Melilli. Dr. Synder, a cardiologist, did a cardiac evaluation of Mrs. Hayes on August 17, 1981; he did not see her before or after August 17, on which date she was also examined by unspecified physicians in other departments at Ochsner Clinic.
Dr. Melilli, family medicine practitioner, examined and treated Mrs. Hayes in his office on sixty-two separate visits during the period May 6, 1980 through September 27, 1982, one week before Dr. Melilli's deposition was taken. Dr. Bolton saw Mrs. Hayes in his office six times between April 25 and August 26, 1980, on June 12, 1981, and on July 12, 1982; on December 13, 1982 his deposition was taken.
"Dr." Li Chang Wang, licensed as an "acupuncturist's assistant" in Louisiana, administered acupuncture "treatment" on forty-five visits to his office, between September 15, 1980 and May 5, 1981; his deposition was taken on May 13, 1981.
Before the accident Mrs. Hayes performed many physical tasks around the family home, including all of the yard work, trimming tree limbs, and housekeeping duties of every kind. She was active in church functions, not only attending church services three times a week but also working as a volunteer in the church office. She drove her car everywhere she needed to go before the accident. She has done no yard work, driving, church volunteer work, or heavy housekeeping duties since the accident and she attends church about once a month. Following the accident Mrs. Hayes, who was almost 47 years old on the date of the accident, has experienced severe headaches, muscle spasms, blood pressure elevation, cardiac problems, back pain, and depression. She attributes all of her medical problems to the injuries she sustained in the automobile accident.

ISSUES
The issues are: (1) Did the Trial Judge properly evaluate the medical testimony and give proper weight to the medical opinions of the various physicians? (2) Did the Trial Judge abuse his judicial discretion by awarding either excessive or inadequate general damages? (3) Did the Trial Judge abuse his judicial discretion by awarding either excessive or inadequate medical expenses as special damages? (4) Did the Court give proper weight to the testimony of plaintiffs and their lay witnesses to bolster the medical evidence as to Mrs. Hayes' disabilities and the reasons for them? (5) Did the Trial Judge err in failing to make an award for future medical expenses? (6) Did plaintiffs' failure to call as witnesses several physicians who examined Mrs. Hayes before and after the accident sued upon give rise to the inference that their testimony would have been adverse to plaintiffs' contentions?

*1249 EVALUATION OF EXPERT AND LAY TESTIMONY
Plaintiffs assert in their brief that the Trial Judge gave too little weight to the testimony of Dr. Jere Melilli while defendants' brief asserts that the Trial Judge based his "high award apparently strictly on the basis of Dr. Melilli's testimony". Defendants state in their brief that it was acceptable for the Trial Court to place "some emphasis on the testimony of Dr. Melilli who was stipulated to be an expert in the field of family practice" but assert that too much weight was given to it "in the face of testimony of multiple orthopedists, neurosurgeons and others" who could not find objective data to support Mrs. Hayes' complaints. Defendants concede that Dr. Melilli "was apparently the primary treating physician", state that he "was the only general practitioner to testify in this case", and rely on the "well settled general rule that the testimony of specialists in an appropriate field of medicine is more persuasive than that of a general practitioner", citing Allen v. Early Company, 300 So.2d 518, 519 La.App. 2nd Cir.1974), as the basis for their contention that "the expertise and observations" of "multiple orthopedists, neurosurgeons and others" which "overwhelmingly favored the defense" was "generally ignored" by the Trial Judge. (Emphasis supplied).
Defendants' reliance on Allen v. Early Company, supra, is misplaced; the principle stated therein was quoted out of context, and Allen is factually distinguishable from this case.
Defendant's brief inconsistently labels Dr. Melilli as "an expert in the field of family practice" and "the only general practitioner to testify", while conceding that Dr. Melilli "was apparently the primary treating physician".
"Family practice is a comprehensive specialty..."
"Residencies in family practice ... [are] three years in duration after graduation from medical school ..."
Intensive structured experience in orthopedics is an integral part of the family practice residency. Directory of Residency Training Programs, Accreditation Council for Graduate Medical Education (AMA, Chicago, 1984), p. 26.
Dr. Jere D. Melilli is listed as a Board certified Family Practice specialist in the 1984 Diplomate Directory of the American Board of Family Practice at page 213. Defendants counsel stipulated at the very beginning of Dr. Melilli's deposition that "Dr. Melilli is an expert in family practice." Thereafter plaintiffs' counsel did not ask the usual questions concerning the medical school he attended and the year he graduated, the number of years in practice, residencies completed, if any, and Board certifications, if any. The stipulation made by defendants' counsel cures any error, if indeed it was error, by plaintiffs' counsel's failure to establish Dr. Melilli as an expert in the field of family practice. Conceding defendants' argument that "the expertise and observations of the other physicians was generally ignored" by the Trial Judge in finding Mrs. Hayes' neck and back problems were caused by the accident sued upon, we do not believe the Trial Judge committed error in doing so. Defendants concede that Dr. Melilli was "the primary treating physician".
Thibodeaux v. Southeastern Fire Insurance Co., 399 So.2d 704, 706 (La.App. 1st Cir.1981), cited by defendants as authority for the proposition that "the weight to be accorded expert testimony is largely dependent upon the expert's qualifications and the facts upon which his opinion is based", is factually inapposite.
This Court, in Johnson v. R.P. Farnsworth and Company, 186 So.2d 405 (La. App. 1st Cir.1966), affirmed the District Court, reasoning as follows:
"It is now settled jurisprudence that in evaluating the testimony of medical experts of equal or nearly equal qualifications, considerable weight and importance must be attached to the relative opportunities for observation of the patient and familiarity with the patient and his history. The testimony of a treating *1250 physician who has had the benefit of repeated examinations and sustained observation of a patient under his direct care and treatment is to be accorded greater weight and probative value than that of a physician who has not undertaken to treat the patient but merely to examine him a few times preparatory to giving expert testimony regarding the patient's condition. (Citations omitted). The testimony of a physician who examines and treats the claimant from the inception of injury is usually entitled to greater weight than the opinion of one who examines the claimant later. (Citations omitted)." 186 So.2d 405, 409. (Emphasis Supplied). Accord: Lockhart v. Pargas, 271 So.2d 664 (La.App. 1st Cir.1972); Jaeckle v. Dresser Industries, Inc., 457 So.2d 646 at 648 (La.1984).
This Court succinctly stated the expert witness rule in Holmes v. Southeastern Fidelity Insurance Co., 422 So.2d 1200 (La.App. 1st Cir.1982), Writ Den. 429 So.2d 133.
"The finder of fact, be it judge or jury, should assess the credibility of witnesses, expert or lay, to determine the most credible and realistic evidence. (Citation omitted) In reaching conclusions, the finder of fact need not accept all of the testimony of any witness as being true or false and may believe and accept a part or parts of a witness' testimony and refuse to accept any part or parts thereof. (Citations omitted) The opinions of expert witnesses are not binding on the finder of fact and are to be weighed the same as any other evidence. (Citations omitted) The weight to be given expert testimony is dependent upon the professional qualifications and experience of the expert and the facts upon which the opinion is based. (Citations omitted) The fact finder's evaluation of expert and lay testimony will not be disturbed unless found to be clearly wrong. (Citations omitted)" 422 So.2d 1200, 1203-1204. (Emphasis supplied). ACCORD: Newitt v. Hospital Corporation of Louisiana, 417 So.2d 391, 394 (La. App. 5th Cir.1982); Galloway v. Gaspard, 340 So.2d 579 (La.App. 1st Cir. 1976); Smith v. Andrepont, 378 So.2d 479 (La.App. 1st Cir.1979).
Dr. Bolton, the orthopedist who treated Mrs. Hayes in the hospital, saw her in his office six days after she was discharged; during that visit she complained of low back pain and severe frequent headaches; at the first office visit Dr. Bolton's impression was that Mrs. Hayes had sustained sprains of the right thumb, neck and back but noted "some improvement in the motion of her neck". He sent Mrs. Hayes to physical therapy "for the affected areas". Mrs. Hayes complained of neck and back pain during the June 12, 1981 and July 12, 1982 visits to Dr. Bolton who noted that she "showed a decreased range of motion in the lumbar spine" on July 12, 1982 and that she "complained of pain on bending and lifting". After Mrs. Hayes' August 26, 1980 visit to Dr. Bolton's office he discontinued follow-up care because "she is still seeing Dr. Melilli weekly".
Dr. Melilli started Mrs. Hayes on cervical traction at home on May 13, 1980 and physical therapy at the Baton Rouge Physical Therapy Center on June 17, 1980 but on July 17, 1980 his examination revealed "her neck muscles were still tight from the base of her skull down into the upper thoracic spine with some limitation of motion" (emphasis added) so he continued physical therapy and cortisone therapy. Mrs. Hayes complained of pain in the upper back and shoulders from the onset of visits to Dr. Melilli's office and "then more progressively the lower back began to take on as much significance as the neck and shoulders".
Twenty-five of the visits to Dr. Melilli were at seven day intervals and twenty-seven were at fourteen day intervals. Mrs. Hayes was given cortisone injections during at least eighteen of the sixty-two visits enumerated in Dr. Melilli's deposition; she was given Vitamin B-12 injections on numerous visits "to reinforce the nervous system"; and oral medications to combat muscular inflammation and to relax the muscles *1251 were prescribed on a continuing basis up to the date of the trial, more than thirty-eight months post-accident.
Dr. Melilli's conclusions, based on treatment up to September 27, 1982, were that: (1) Mrs. Hayes has a chronic cervical strain; (2) the continued presence of the muscle spasm and tenderness renders her prone to have a herniated nucleus pulposus of the cervical spine, even in the absence of neurological deficits; (3) the post-concussion syndromes had been alleviated, "probably within one month" post-accident; (4) plaintiff has a chronic lumbosacral strain which could explain the history of pain radiating down the leg. Further, Dr. Melilli was of the opinion that plaintiff's cervical strain problem and her back problem reached plateau status about a year and a half before his deposition on October 5, 1982; only gradual improvement has been noted; the prognosis for her back problems is "guarded". Dr. Melilli projected, as future medical treatment, "mainly supportive care, occasional physical therapy, occasional use of muscle relaxers, and anti-inflammatory agents" for a period of time "very difficult to say." Mrs. Hayes was "very cooperative" toward treatments, recovery or wanting to get well, but "she has developed some depression concerning her accident, which, of course, compounds the prognosis and eventual recovery." For the year preceding October 5, 1982, Mrs. Hayes' condition was such that she was "probably limited to doing fifty to sixty percent of duties a normal housewife would be expected to do... without difficulty." Conditions remained the same through June, 1983. Comparing Mrs. Hayes' "voluntary guarding" when Drs. Bolton and Melilli attempted range of motion movements during Dr. Bolton's eight office examinations and Dr. Melilli's sixty-two office examinations, Dr. Melilli "assess(es) more value to the fact that there was consistently tenderness in the same locations on each visit, virtually the same areas of resistance on each of these visits, which would tend to give some degree of credibility to the injury, in that if the patient was merely malingering it is generally a migratory type of symptoms that are present." Dr. Melilli based his opinion on "not only subjective complaints, but the consistent limitation of motion and tenderness due to what I felt was apparently legitimate pain." Dr. Melilli's deposition, taken as a whole, attributes plaintiff's back problems to the accident, and her "depression problem" primarily to the accident rather than menopausal overlay.
The District Judge observed that he "was quite impressed with the testimony of all of the witnesses" and found that Mrs. Hayes "did suffer prolonged injuries" causally connected to the accident by Dr. Melilli's deposition. The Court found no causal relationship between the automobile accident and a cardiovascular disorder that is hereditary, an enlarged pupil in one eye, and hypertension. Plaintiffs have abandoned those contentions on appeal.
In F & S Offshore, Inc. v. Service Machine & Shipbuilding Corporation, 430 So.2d 1167 (La.App. 1st Cir.1983), as in this case, "the record is made up of testimony taken in court in the presence of the trial judge and depositions of witnesses taken out of his presence. In evaluating the testimony adduced in open court, we must follow the rules enunciated in Canter [v. Koehring Co. (La.1973)] and Arceneaux because the trial judge is in a better position to evaluate the credibility of the witnesses (as compared with an appellate court's access only to a cold record). However, where a trial judge relies on the deposition of a witness, the rules of Canter and Arceneaux do not apply because the trial judge is in no better position to assess credibility than an appellate court. (citations omitted) When evaluating depositions, rather than live testimony, we must determine the sufficiency and preponderance of the evidence. (citation omitted)" 430 So.2d 1167, 1173. ACCORD: Bridgewater v. Crown Zellerbach, 449 So.2d 515, 520 (La.App. 1st Cir.1984); Durbin v. Cockerham, 442 So.2d 634, 636 (La. App. 1st Cir.1983); and Gould v. State, Through Department of Corrections, 435 So.2d 540, 543 (La.App. 1st Cir.1983). (Parentheses and emphasis supplied).
*1252 Neither the District Court, as the trier of fact, nor this Court, as reviewer of fact and law, is required "to accept all of the testimony of any witness"; thus, either court "may believe and accept a part or parts of a witness' testimony and refuse to accept any part or parts thereof" insofar as deposition testimony is concerned. Holmes, supra, p. 1203. The District Court evaluated the live testimony of lay witnesses and the deposition testimony of medical experts. His evaluation of the lay testimony will not be disturbed unless it is found to be clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1978). We, like the District Court, have determined that plaintiffs proved the causal relationship between the vehicular collision and the injuries. Plaintiff's disabilities testified to by the physicians has been proven by a preponderance of the evidence.

ADVERSE INFERENCE
Plaintiffs did not call as witnesses Dr. Lutschg, the physician who admitted Mrs. Hayes to the hospital the day of the accident and who had treated her before the accident and one time after she was discharged from the hospital. Defendants argue that plaintiffs' failure to call Dr. Lutschg and "various treating physicians" gives rise to the presumption that those physicians would have testified adversely to plaintiffs' cause, citing Vidrine v. Sentry Indemnity Co., 341 So.2d 558 (La.App. 3rd Cir.1976)), Writ Den. 343 So.2d 202.
Vidrine, supra is factually inapposite and of no real value in resolving the adverse presumption issue raised by defendants for the first time in this Court.
In Bagley v. Commercial Union Insurance Company of New York, 216 So.2d 102 (La.App. 1st Cir.1968), this Court was asked to invoke the adverse presumption rule because the physician who admitted the accident victim to the hospital and treated her during a three-day hospitalization was not called to testify. From four days post-accident and for over three months the injured minor was treated by the general practitioner who testified at the trial. In disposing of defendants' contention "that an unfavorable inference should be drawn from the failure of plaintiffs to call the physician who initially treated her upon admission to a hospital on the night of the accident," this Court reasoned as follows:
"... In effect our jurisprudence holds that failure to call the examining physician in cases of this nature gives rise to the negative presumption that the testimony of such a witness would be prejudicial to plaintiff's cause. (Citations omitted) Where, however, the party against whom the inference is sought to be imposed has established his case by a preponderance of other competent testimony, such negative inference is held to have been successfully rebutted. (Citations omitted) In this regard we find that plaintiffs have produced the testimony of Dr. John T. Lewis, General Practitioner, who undertook treatment of plaintiff from March 10, 1966, four days following the accident, until June 16, 1966. Dr. Lewis' testimony, as will hereinafter appear, fully covers the nature, scope and duration of Miss Bagley's injuries. In view thereof, we unhesitatingly conclude plaintiffs have eliminated any unfavorable inference which might otherwise have resulted herein from failure to adduce the testimony of the medical authority who first treated Miss Bagley." 216 So.2d 102, 107. (Emphasis supplied).
In Liner v. Patrick, 421 So.2d 391 (La. App. 1st Cir.1982) the plaintiff saw three physicians during the five months after the accident but not one was called to testify. The physician who saw her initially five months post-accident testified that he treated plaintiff "for many complaints but primarily for a painful coccyx". This Court held it was proper to invoke the adverse presumption against plaintiff because "there was no evidence relative to plaintiff's medical condition for the five-month period immediately after the accident".
The Fifth Circuit Court of Appeal recently refused to apply the adverse presumption *1253 against a plaintiff who had been examined by four psychiatrists but only one psychiatrist testified. Faucheaux v. Hooker Chemical Corp., 440 So.2d 1377, 1382 (La.App. 5th Cir.1983), Writ granted. "In Re Hooker, applying for Certiorari", 444 So.2d 1251, Writ withdrawn, 459 So.2d 498 (1984). The Court held that the testimony of the psychiatrist and lay witnesses supported plaintiff-appellee's claim of mental disability. Therefore the adverse presumption was rebutted. In reaching its decision the Court reasoned, in part, that:
"... Under the jurisprudence, it is well established that an adverse presumption arises upon the unexplained failure of a party to call a witness who possesses peculiar and material knowledge essential to that party's case, when that witness is available to him, but the presumption is rebuttable. (Citations omitted) However, `this presumption is not sufficient to outweigh or overcome the positive testimony of medical doctors who did testify inasmuch as a litigant is not required to produce all witnesses who might have some knowledge as to the matter in dispute'. (Citations omitted). The courts have held this to be particularly pertinent where the witness is equally available to the defendant. (Citations omitted)." 440 So.2d 1377, 1382, (Emphasis supplied).
The positive testimony of Dr. Melilli and Dr. Bolton was sufficient to rebut the adverse presumption urged by defendants. The physicians whose testimony defendants argue would have been adverse to plaintiffs' cause were equally available to defendants. However, defendants' defense consisted entirely of cross-examination of plaintiffs and their witnesses.

QUANTUM
Both plaintiffs and defendants contend the award of $20,000.00 for pain and suffering was an abuse of judicial discretion and this Court should modify the award.
Neither plaintiffs nor defendants cite any cases in support of their respective positions that the general damages awarded were inadequate or excessive. Defendants argue that "under the circumstances the award was excessive". Plaintiffs argue the "award of damages was woefully inadequate in comparison to the injuries sustained".
"Recompense for pain and suffering `... cannot be calculated with any mathematical precision'. Boutte v. Hargrove, 290 So.2d 319 at 322 (La.1974)." Walton v. William Wolf Baking Company, Inc., 406 So.2d 168, 175 (La.1981).
In the assessment of general damages "much discretion must be left to the [trial] judge or jury". Civil Code Article 1934(3)." Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963) is the fountainhead decision of modern jurisprudence interpreting and applying this code provision." Reck v. Stevens, 373 So.2d 498 (La.1979).
"The primary question before the appellate court ... is whether the judge or the jury in fixing the amount of the award has abused its great discretion vested in them by law ... [Prior decisional awards] relied upon may be similar in that each of them involve a similar injury such as broken arm, the loss of an eye or eyes, or the loss of some member of the body. Thereafter, however, the similarity ceases for each case is different, and the adequacy or inadequacy of the award should be determined by the facts or circumstances peculiar to the case under consideration. The primary purpose of the judge or jury in fixing the award in a personal injury case is to adequately compensate the injured person for his injury under the facts shown to exist in his case." Gaspard v. LeMaire, 158 So.2d 149, 158, quoted in Reck v. Stevens, supra at 373 So.2d 499-500.
We have scrutinized the facts and circumstances peculiar to the case under consideration. Our analysis of the record, which includes the depositions and records of physicians and others who treated Mrs. Hayes, fails to "clearly reveal that the trier of fact abused its discretion in making its award", a prerequisite for an appellate court to "disturb an award made *1254 by a trial court". Coco v. Winston Industries, Inc., 341 So.2d 332, 335-336 (La. 1977). Because we have determined that the record does not "clearly reveal that the trier of fact abused its discretion in making its award" it is not appropriate for this Court to "resort to prior awards" to determine whether we would have made a larger or smaller award had we been the trier of fact. Prior awards, as an aid in determining excessiveness or insufficiency, may be used only if the present award is shown to be greatly disproportionate to the mass of past awards for truly similar injuries. Reck v. Stevens, supra, at 501; Walton v. William Wolf Baking Co., supra.
We find this $20,000.00 general damages award to be neither excessive nor inadequate and it will not be disturbed. Accordingly, plaintiffs' third assignment of error and defendants first assignment of error are without merit.

FUTURE MEDICAL EXPENSES
Plaintiffs' assign as error the District Court's failure to award future medical expenses, citing Naylor v. Louisiana Department of Public Highways, 423 So.2d 674 (La.App. 1st Cir.1982) as authority for their contention that the failure to award future medical expenses constituted an abuse of discretion. In Naylor the District Court awarded future medical expenses, consisting of nursing care and hospitalization, based on testimony of a nurse, a physician, and an economist, all of whom projected the cost of the future care the accident victim would require for the period of his incapacity.
In the present case the only testimony regarding future medical attention is in Dr. Melilli's deposition which was taken almost eight months before the trial. He projected that Mrs. Hayes would require "mainly supportive care, occasional physical therapy, occasional use of muscle relaxors, and anti-inflammatory agents" for an indeterminate time, such are to consist of the care given for a year and a half before the deposition was taken. Dr. Melilli's charges for services to the date of the trial were $2,558.00, physical therapy he ordered cost $319.00, and muscle relaxors and anti-inflammatory drugs to the date of trial cost $514.75. Thus, for the thirty-eight months post-accident care either provided for Mrs. Hayes by Dr. Melilli or ordered by him, the total cost was $3,391.75.
The failure of the District Court to award any damages for future medical expenses is an abuse of discretion. Prevost v. Cowan, 431 So.2d 1063, 1067 (La.App. 1st Cir.1983); Reck v. Stevens, supra. Dr. Melilli was unable to state how long Mrs. Hayes would require future medical services of a "mainly supportive" nature and no testimony regarding their cost was offered at the trial or by deposition. Based on the cost of medical services already provided by Dr. Melilli or ordered by him, we find that the plaintiffs are entitled to special damages of $3,000.00 for future medical expense.

OTHER SPECIAL DAMAGES
Defendants assign as errors the awarding of Dr. Melilli's entire bill, awarding the bill of the acupuncturist, and "other" non-specified "damages that simply are not related to the accident". Dr. Melilli treated Mrs. Hayes from May 6, 1980 until June 29, 1983, when the case was tried, for problems attributable to the accident. It was Dr. Melilli who suggested Mrs. Hayes might benefit from acupuncture treatments administered by someone working under Dr. Melilli's supervision. It is unfortunate that the acupuncture treatments did not produce the benefits Dr. Melilli and Mrs. Hayes hoped they would. Defendants have cited no jurisprudence, and we can find none, which holds that unless a method of treatment ordered by the treating physician produces the desired results the patient cannot recover the cost of those treatments as special damages in a tort action.
Defendants contentions regarding the special damages awarded are without merit.

*1255 DECREE
Accordingly, the judgment of the trial court is amended and plaintiffs are awarded $3,000.00 for future medical expenses with legal interest thereon from date of judicial demand until paid. In all other respects the judgment is affirmed. Costs are to be paid by defendants.
AMENDED AND AS AMENDED, AFFIRMED.
NOTES
[*] Judge John S. Covington of the 19th Judicial District Court has been duly elected to this court; that term begins on January 1, 1985. In the interim, the Supreme Court has appointed him to this court pro tempore.