SHORTESS, Judge.
Beverly Theresa Hollingsworth (plaintiff) was involved in an accident on November 25, 1981, when the vehicle she was driving was struck in the rear by a three-quarter *1148 ton pickup truck owned by State Farm Mutual Automobile Insurance Company’s insured, Willie E. Johns, and driven by Craig S. Ponder. The force of the impact knocked plaintiffs vehicle 60 feet off the road and broke the backs of the two front seats occupied by plaintiff and her brother Joe. A suit for damages was filed by plaintiff on November 18,1982. Johns and State Farm, and Ponder filed separate answers on December 3, 1984. Ultimately, the parties entered a written stipulation: defendants agreed that legal liability for the accident was theirs, and the parties agreed that the amount awarded in judgment would not exceed State Farm’s policy limits of $100,000.00. Defendants sought a trial by jury which began on September 15, 1987, almost six years after the accident. On completion of the evidence, the jury deliberated and returned a special verdict and found that the total amount of damages suffered by plaintiff was $100,000.00. State Farm brought a motion for judgment notwithstanding the verdict, remittitur, or in the alternative, new trial, which was denied by the trial court. State Farm then suspensively appealed.
FACTS
Plaintiff was an English instructor at Louisiana State University at the time of the accident and taught English composition to freshman students. The record supports the fact that she continued teaching until she moved to Washington D.C. several years after the accident and that she did not lose any time from her teaching duties as a result of this accident. She was a physically active person, and the record abundantly supports the fact that she lifted weights, jogged about two miles a day, cycled, and enjoyed tennis. The record also supports the fact that she does none of these things now.
Many witnesses were called on plaintiff’s behalf, including her mother and father, her supervisor at LSU, her office mate at LSU, several roommates who had lived with her after the accident until she moved to Washington, and her husband.[1] The medical evidence included testimony from two neurosurgeons and a licensed physical therapist, and a report from a neurosurgeon in Washington.
The lay witnesses were in agreement. Before the accident, plaintiff was a hardworking, vibrant, and physically active human being. Since the accident, she had completely curtailed all physical activities other than those necessary to pursue her teaching duties. These witnesses supplied verification for the plaintiff's testimony that she has been in pain and has not been the same since the accident. The witnesses cover the entire time frame from the date of the accident until the time she left for Washington, some time after her marriage.
Plaintiff testified that she felt pain in her neck immediately after the accident, and when she did not improve, on December 18, 1981, went to see Dr. Homer Kirgis, longtime head of the Department of Neurology at Ochsner Clinic in New Orleans. Dr. Kirgis testified that he found muscle spasm on his initial examination and a slight reduction in the normal movement of her head and neck. His original x-rays showed a loss ór reversal of the lordotic curve. He prescribed heat therapy, a soft cervical collar, and an anti-inflammatory medicine, Ascriptin. He saw plaintiff on January 5, 1982, July 16, 1982, July 23, 1982, November 4, 1982, May 26, 1983, August 4, 1983, and September 23, 1986. Periodic x-rays taken during these examinations continued to demonstrate the reversal of her lordotic curve. He found spasm on all but one or two occasions. Dr. Kirgis was of the opinion that the cause of her cervical instability came from ligament damage to her cervical region caused by the automobile accident. By August 4, 1987, he was of the opinion that eventually her symptoms might subside to some extent but that, after six years, he was not too hopeful because the passage of time increases the likelihood that some disc involvement might develop.
*1149 On the other hand, Dr. Anthony S. Ioppo-lo, a neurosurgeon in Baton Rouge whom plaintiff went to see for a second opinion on January 19, 1983, found the x-rays that she brought with her and the x-rays he had taken in March of 1983 to be normal. He never elicted any muscle spasm, and his examinations found her normal except for decreased biceps and brachial radial reflexes. He prescribed home traction and saw her again on February 25, 1983, and April 20, 1983. On May 13, 1983, he placed her in the hospital for some concentrated traction therapy. However, after three or four days, plaintiff asked him to discharge her from the hospital because the traction aggravated her neck symptoms.
Our examination of this record convinces us that the jury obviously placed greatest weight on Dr. Kirgis’ testimony and believed the testimony of plaintiff and all of her witnesses that she had suffered a painful injury to her neck which had lasted for many years and affected adversely her entire lifestyle, and which will continue to give her pain and discomfort in the future.
Our task is to determine whether or not the jury abused its great discretion in awarding plaintiff $100,000.00 for these injuries. In making that review, we were favored with excellent oral reasons by the trial court in its denial of defendants’ post-trial motions for judgment notwithstanding the verdict, remittitur, and new trial. Therein, the trial court stated:
The primary purpose of the judge or jury in fixing the award in a personal injury case is to adequately compensate the injured person for his injury under the facts shown to exist in his case. It is not appropriate for this Court to resort to prior awards to determine whether we would have made a larger or smaller award had we been the trier of fact. Prior awards, as an aid in determining excessiveness or insufficiency, may be used only if the present award is shown to be greatly disproportionate to the mass of past awards for a truly similar injury. (Citing Hayes v. Commercial Union Assurance Company, 459 So.2d 1245, 1254 (La.App. 1st Cir.1984), writ denied, 462 So.2d 1247 (1985))
I think that is a good policy for the Court to take when it is reviewing and thinking about whether an award should be changed. Each case has its own thumbprint. While we may have some similarities, each case has its own thumbprint. None of the cases cited by either side were precisely the same because it could never be. If it comes close, I guess the Court, by the dictates of the First Circuit in the case just cited, the Hayes case, which is 459 So.2d 1245, can consider the mass of cases to see if an award is so out of line. None of the cases were exactly on point.
The case before the Court, for one reason or another, was brought to trial almost six years post accident. The accident happened November of 1981 and was tried in September of 1987. The record reveals that the plaintiff, through her testimony and through the testimony of her friends and relatives, was that she was having trouble ever since the accident, which is unusual and not the usual case from what was diagnosed as a soft-tissue injury. Of course, Dr. Kirgis, the old gentleman doctor from New Orleans, indicated that once in a while you get a case of this nature. Obviously, he impressed the jury that the lady was not faking and was sincere in her complaints. She convinced the jury. That was a credibility issue. The jury eyeballed them and decided. She had the complaint six years, and his opinion was that she may have problems in the future. He thinks it could continually subside (sic). There was a history of her not being able to do the things she used to do. There was no great [excruciating] pain but discomfort that kept her from doing things she used to do, a nagging-type problem for almost six years at the time of trial.
Even though I personally feel that the jury put the award on the high end of the stick, if you were on the low end of the [stick], you would get the same result from me. I think it was not excessive to the point that the Court would grant the remittitur in lieu of the new trial. Like *1150 the Hayes case states, every case is different and the adequacy or inadequacy of the award should be [determined] on the facts and circumstances peculiar to that case. There were some distinct facts peculiar to this case.
Our examination of the record convinces us that the trial court was correct in its observations. Plaintiff's injury, even after six years, is causing her much pain and discomfort and has required her to change her lifestyle. The award, while arguably on the “high side,” cannot be considered an abuse of the jury’s great discretion. Reck v. Stevens, 373 So.2d 498 (La.1979). For the reasons stated, the decision of the trial court is affirmed at State Farm’s costs.
AFFIRMED.

. At the time of trial, she and her husband, Michael Conroy, were separated but were still friends.